IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD BEDFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 6:25-cv-00333-DES |
| | ) |
| CITY OF MCALESTER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CITY OF MCALESTER'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

Defendant City of McAlester moves this Court to dismiss Plaintiff's case with prejudice under Federal Rule of Civil Procedure 12(b)(6). Plaintiff seeks declaratory relief imposing a duty on a municipal police department to issue him identification to carry concealed firearms nationally under the Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926C. Plaintiff's claim fails as a matter of law because LEOSA does not impose such a duty. In support, the City states as follows:

**INTRODUCTION**

This case presents a straightforward question: does the Law Enforcement Officers Safety Act, 18 U.S.C. § 926C, require state and local officials to administer a federal credentialing program by issuing identification cards to retired officers who meet certain criteria? The answer is no. LEOSA provides a federal defense against the enforcement of state and local firearms restrictions for qualified officers who already possess the required identification. But it does not compel States or

municipalities to create, administer, or provide that identification in the first place. The Tenth Amendment leaves no other possibility.

Plaintiff, a retired McAlester police officer, seeks a declaration that the City and its Police Department are legally required to provide him a LEOSA credential. That claim fails for two reasons.

***First,*** LEOSA's text and structure impose no duty on States or municipalities to issue credentials. At most, the statute creates a federal right for those retired officers who already possess qualifying identification, because in that circumstance state firearms restrictions are preempted. But LEOSA contains no duty-imposing command directed to state or local governments requiring them to provide such identification in the first place.

***Second,*** reading LEOSA to require state and local officials to issue federal credentials would raise grave constitutional problems. Such a construction would conscript state agencies into designing, maintaining, and administering an identification system to serve federal ends—precisely the sort of commandeering that the Tenth Amendment forbids. By diverting local resources to enforce federal policy, it would repeat the same constitutional defects the Supreme Court identified in its anticommandeering cases.

Moreover, established principles of statutory interpretation require courts to adopt the reading that avoids serious constitutional concerns when the text of the statute admits a reasonable alternative. Where Congress's words reasonably permit two interpretations, the canon of constitutional avoidance guides the reader to choose

the one that preserves both the statute and constitutional boundaries. Here, that means reading LEOSA as a shield for those who already possess identification, not as a federal command that States create and administer a credentialing program.

Because LEOSA supplies no basis for the relief Plaintiff seeks, the complaint should be dismissed with prejudice.

## BACKGROUND

1. Congress enacted the Law Enforcement Officers Safety Act of 2004, Pub. L. No. 108-277, as amended by Pub. L. No. 111-272 and No. 112-239, to—among other things—allow qualified retired law enforcement officers to carry a concealed firearm notwithstanding most state and local restrictions. 18 U.S.C. § 926C. The statute extends this protection only if two conditions are satisfied: (1) the individual meets LEOSA's definition of a "qualified" officer, and (2) the individual "is carrying the identification required" by the Act. *Id.* § 926C(a).

2. LEOSA defines the necessary identification as either (1) a photographic ID issued by the officer's agency reflecting retired status, or (2) a photographic ID plus a state-issued certification that the retiree has met firearms-qualification standards. *Id.* § 926C(d). When those conditions are met, state and local prohibitions on concealed carry of firearms are preempted.

3. Plaintiff, Richard Bedford, is a retired officer of the McAlester Police Department. He retired due to post-traumatic stress disorder (PTSD), among other alleged ailments. *See* Doc. 2-2, ¶¶ 8-9.

4. He filed this action in Oklahoma state court under the state declaratory-judgment act, Okla. Stat. tit. 12, § 1651 *et seq.*, seeking a declaration that the City

and its Police Department are legally required to issue him a LEOSA identification card. The City removed the case because it raises a federal question regarding the meaning and effect of a federal statute. *See* Doc. 2; Doc. 2-2, ¶ 6(a)-(b).

## ARGUMENT

This case may be resolved as a matter of law. On a Rule 12(b)(6) motion, the Court accepts the complaint's factual allegations as true but must dismiss if the governing law imposes no duty on the defendant or provides no cause of action. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) ("This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding."). Here, even crediting Plaintiff's allegations, his claim fails because LEOSA does not require States or municipalities to issue identification cards.

That conclusion follows from the statute's language, the weight of authority from the circuit courts of appeals, and the Supreme Court's recent clarification in *Medina v. Planned Parenthood South Atlantic*, 143 S. Ct. 2219 (2025). Even if the statute could be read to impose such a duty, that reading would run headlong into the Tenth Amendment's anti-commandeering principles. And because Plaintiff's construction would raise such serious constitutional concerns, the canon of constitutional avoidance requires this Court to reject it in favor of the narrower, textually sound reading.

I.  **LEOSA imposes no mandatory duty on municipalities to issue national concealed-carry identification cards.**

LEOSA's operative provision states that a "qualified retired law enforcement officer … may carry a concealed firearm" notwithstanding most contrary state laws, provided that the officer "is carrying the identification required." 18 U.S.C. § 926C(a), (d). That phrasing presupposes the existence of identification but nowhere commands state or local authorities to issue it. Congress knows how to impose such obligations when it intends to. For example, the Driver's Privacy Protection Act directs that state motor vehicle departments "shall … disclose[]" certain records when statutory conditions are met. 18 U.S.C. § 2721(b). LEOSA contains no comparable "shall issue" directive. Its structure is instead preemptive: it removes certain state-law barriers for officers who already have the necessary identification, but it leaves the issuance of that identification to the discretion of state and local agencies.

Courts addressing LEOSA have recognized that its text does not contain the sort of unambiguous, rights-creating language required to support a cause of action under 42 U.S.C. § 1983. The statute speaks in terms of preemption and conditional permission, not entitlement. As the Supreme Court has explained, § 1983 is available only when Congress has "unambiguously conferred" a right on a defined class of beneficiaries. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). That standard is not met when a statute merely expresses a federal policy or sets conditions for program participation. *Id.* The claim here is styled as a request for declaratory relief under state law,[1] not as an action under 42 U.S.C. § 1983. But the threshold problem is the

---

[1] *See, generally,* Doc. 2-2.

5

same: LEOSA contains no substantive obligation on the part of state or municipal governments that a court could declare or enforce.

Indeed, the federal courts of appeals are virtually unanimous on this point. In *Carey v. Throwe*, 957 F.3d 468, 479 (4th Cir. 2020), the Fourth Circuit held that "[LEOSA] lacks any express rights-creating language," and "use[s] precatory rather than mandatory" terms, lacks any express remedial provision, and "does not unambiguously impose a binding obligation on the States." The First Circuit agreed in *Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020), a due process case, stating that LEOSA "leaves to state and local agencies the issuance of identification cards to their retired officers." The Eleventh Circuit said the same in *Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1279 (11th Cir. 2019): "[w]e need not belabor our analysis because no provision of § 926C, read individually or together, 'unambiguously impose[s] a binding obligation on the States' to give agency-issued, LEOSA-compliant identification to retired law enforcement officers."[2]

The D.C. Circuit's decision in *Duberry v. District of Columbia*, 824 F.3d 1046 (D.C. Cir. 2016), is the outlier case suggesting that LEOSA might impose enforceable obligations.[3] But *Duberry* rested on the now-superseded three-part test from *Blessing*

---

[2] The Ninth Circuit, in an unpublished disposition, likewise affirmed a holding of the district court that LEOSA "does not establish a private right of action" for retirees seeking credentials on procedural grounds. *Risby v. Nielsen*, 768 F. App'x 607, 608 (9th Cir. 2019). And the U.S. District Court for the Eastern District of Illinois reached the same conclusion in *Henrichs v. Illinois L. Enf't Training & Standards Bd.*, 306 F. Supp. 3d 1049, 1056 (N.D. Ill. 2018).

[3] The D.C. Circuit also acknowledged the holding in the subsequent *Duberry v. District of Columbia*, 924 F.3d 570, 574 (2019) ("*Duberry II*") (addressing whether correctional officers qualified under for the program).

*v. Freestone*, 520 U.S. 329 (1997). That test asked only whether the statute was intended to benefit the plaintiff, whether the asserted right was sufficiently definite, and whether the obligation was mandatory. *Duberry*, 824 F.3d at 1051. Applying that permissive standard, the *Duberry* court concluded that LEOSA satisfied all three prongs. Since then, however, the Supreme Court has made clear that *Blessing* is no longer the governing framework.

In *Medina*, the Court held that only statutes with unambiguous rights-creating language may be judicially enforced, and it rejected the looser approach that had allowed courts to treat broadly worded statutes as enforceable. The Court's instruction could not be clearer: "[t]o the extent lower courts feel obliged, or permitted, to consider the contrary reasoning [that is, anything short of 'clear and unambiguous'] of … *Blessing*, they should resist the impulse." 145 S. Ct. at 2234.

Under *Medina*, LEOSA's text falls well short. The very feature that led most circuits to already reject a duty even under *Blessing*—the absence of rights-creating language—is only confirmed *a fortiori* by *Medina*'s heightened standard. Thus, even if *Duberry* once had persuasive force, it cannot be squared with current doctrine.[4]

In sum, LEOSA does not supply what Plaintiff seeks. Its text presupposes the existence of identification but does not obligate States or municipalities to provide it. Its structure contains no duty-imposing language of the type Plaintiff seeks to

---

[4] There are more reasons not to treat *Duberry* as persuasive discussed *infra*. at Argument, Part III.

enforce.[5] Because LEOSA creates no substantive duty that a court could declare or enforce, Plaintiff's claim fails at the threshold.

## II. Plaintiff's reading of LEOSA would render it unconstitutional under anticommandeering principles.

Even if LEOSA could be read to impose a duty on States or municipalities, that construction would be unconstitutional. The Supreme Court has repeatedly made clear that Congress may not "commandeer" state governments by requiring them to enact, administer, or enforce a federal regulatory program. *See New York v. United States*, 505 U.S. 144, 188 (1992); *Printz v. United States*, 521 U.S. 898, 920 (1997); *Murphy v. NCAA*, 584 U.S. 453, 466 (2018).

In *New York v. United States*, the Court held that "the Federal Government may not compel the States to enact or administer a federal regulatory program." 505 U.S. at 188. In *Printz v. United States*, the Court emphasized that the Constitution "confers upon Congress the power to regulate individuals, not States." 521 U.S. at 920. And in *Murphy v. NCAA*, the Court noted that "conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States" and ultimately held that "the Constitution does not empower Congress to subject state governments to this type of instruction." 584 U.S. at 471. Together these cases draw a bright line: while Congress may regulate private conduct, it may

---

[5] To be clear, there is persuasive authority that LEOSA may create certain rights, but not the right that Plaintiff seeks here: to force the State to issue a credential. *See, e.g., Federal Law Enforcement Officers Association v. Attorney General of New Jersey*, 86 F.4th 142 (3d Cir. 2024) discussed *infra.* at Argument Part III (acknowledging a right to carry concealed firearms applied to qualified officers who already possess the identification from the State despite local firearm laws to the contrary).

not shift responsibility for federal programs onto state legislatures or officers by requiring them to administer federal programs. Plaintiff's preferred reading of LEOSA crosses that line.

"[A]dherence to the anticommandeering principle is important." *Id.* at 473. The anticommandeering doctrine represents a fundamental structural limitation on congressional power rooted in the Constitution's enumerated powers framework and the Tenth Amendment's reservation of authority to the states. *Id.* at 470. The doctrine prohibits Congress from issuing direct orders to state governments—whether to their legislative or executive branches—because the Constitution withholds from Congress any power to command state action or dictate what state legislatures may or may not do. *Id.* at 471.

This principle serves multiple constitutional purposes. It operates as one of the Constitution's structural protections of liberty, promotes political accountability by ensuring that the government responsible for a policy bears the political consequences, and prevents Congress from shifting regulatory costs to the states. Most significantly, the anticommandeering rule forces Congress to internalize the true costs of federal programs—if Congress wants a law enforced, it must appropriate funds for federal administration rather than compelling states to bear the financial and administrative burden, thereby ensuring that Congress weighs a program's benefits against its actual costs. *Id.* at 473-74.

Plaintiff's interpretation of LEOSA would do precisely what the anticommandeering principle forbids by compelling state and local officials to

9

administer a federal firearm credentialing regime. By obligating state and local police departments to issue federal credentials on demand, it would conscript local officials into carrying out a federal firearms policy. That arrangement is indistinguishable in principle from the requirement struck down in *Printz*, where local sheriffs were ordered to conduct background checks for prospective handgun purchasers under the Brady Act. 521 U.S. at 925–27. In both situations, the federal government seeks to enlist state officers into executing federal law, thereby diverting local resources to serve federal ends. The Tenth Amendment does not permit that result.

Credentialing requires the creation and maintenance of identification systems, verification of eligibility, and ongoing administrative oversight. Imposing those tasks on state and local agencies might divert personnel, funding, and institutional resources to carry out a federal program. That is the very type of intrusion on state sovereignty that the Tenth Amendment guards against. As *Murphy* explained, the Constitution withholds from Congress the power to issue "direct orders to the governments of the States," 584 U.S. at 466, and Plaintiff's reading of LEOSA would do just that.

For these reasons, Plaintiff's interpretation of LEOSA cannot be sustained. Read as he urges, the statute would conscript state and local officials into establishing and maintaining a credentialing system on behalf of the federal government—precisely the outcome forbidden by the Constitution's anticommandeering principles at the heart of the Tenth Amendment and our federalist system.

## III. The canon of constitutional avoidance requires rejecting Plaintiff's reading of LEOSA.

Against the backdrop of anticommandeering, Plaintiff's reading of LEOSA must be rejected because it would raise serious constitutional problems, and a narrower, textually sound construction avoids them. The canon of constitutional avoidance directs courts to adopt the latter reading where the statute is susceptible of more than one plausible interpretation.

The Supreme Court has long applied this canon where competing constructions are available. In *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988), the Court adopted a narrower reading of a labor statute to avoid First Amendment problems. In *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), it construed an immigration detention statute to include a temporal limit to avoid indefinite confinement. Similarly, in *Bond v. United States*, 572 U.S. 844, 857–60 (2014), though not expressly invoking the canon, it read a federal criminal statute not to reach ordinary local assaults, thereby avoiding intrusion on state police powers. These cases illustrate the consistent principle that where statutory text is reasonably open to more than one interpretation, courts must choose the construction that avoids grave constitutional concerns. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

If any ambiguity in LEOSA is found, that principle applies here. As explained above, Plaintiff's reading of LEOSA would require state and local officials to issue and administer identification cards for retired officers, thereby commandeering state resources in service of a federal program. That construction would raise the same

Tenth Amendment concerns identified in *New York*, *Printz*, and *Murphy*. At a minimum, it would cast a serious constitutional shadow over the statute. Because LEOSA can be read more modestly, as a preemptive defense for qualified officers who already possess identification, the canon of constitutional avoidance requires this Court to adopt that narrower construction. Indeed, most circuit courts have adopted such a construction without the aid of the constitutional avoidance canon.

The two circuit cases—one from the Third Circuit and the other from the D.C. Circuit—often cited to the contrary are not persuasive authority here for two independent reasons. First, as noted above, both relied on the now-superseded *Blessing v. Freestone* framework to conclude that LEOSA could be enforced in court. That approach has since been displaced by *Medina*, which requires clear, unambiguous rights-creating language, which is something LEOSA lacks.

Second, neither case presented the Tenth Amendment concerns at stake here. In *Duberry v. District of Columbia*, the defendant was the District of Columbia, which "is not a State and therefore is not protected from federal encroachment by the Tenth Amendment." *Henrichs*, 306 F. Supp. 3d at 1057. And in *Federal Law Enforcement Officers Association v. Attorney General of New Jersey*, 86 F.4th 142 (3d Cir. 2024), the plaintiff officers already possessed LEOSA credentials and challenged only additional state restrictions, so the case did not involve any federal compulsion of state officers to issue identification. For both reasons, neither decision can support Plaintiff's position here.

The canon of constitutional avoidance thus points decisively to the narrower construction. If Plaintiff's interpretation were accepted, LEOSA would impose direct duties on state and local officials, raising serious Tenth Amendment problems. Because the statute is reasonably read instead as a federal preemption provision that applies only when a retired officer already possesses identification, the Court should adopt that construction. That reading is faithful to the text, consistent with precedent, and avoids rendering the statute unconstitutional.

\* \* \* \*

In the end, the canon of constitutional avoidance leads back to where we began. Because LEOSA does not unambiguously impose the duty Plaintiff seeks or create a right of the sort that Plaintiff seeks, the claim fails as a matter of law. If not—that is, if LEOSA unambiguously conscripts local government to administer this federal firearms program—then that provision constitutes an unconstitutional commandeering of state functions, and must be struck down. "Under the Tenth Amendment, it could not be any other way." *Henrichs*, 306 F. Supp. 3d at 1056.

## CONCLUSION

Because the statute provides no basis for the relief Plaintiff seeks, the complaint should be dismissed with prejudice.

Date:  September 25, 2025

          Respectfully submitted,

          /s/ *Randall J. Yates*
          Randall J. Yates, OBA #30304
          Crowe & Dunlevy, P.C.
          222 N. Detroit Ave., Ste. 600
          Tulsa, OK 74120
          randall.yates@crowedunlevy.com
          918.592.9866
          *Attorney for City of McAlester*

## CERTIFICATE OF SERVICE

This is to certify that on September 25, 2025, I filed the attached document with the Clerk of the Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

          /s/ *Randall J. Yates*
          RANDALL J. YATES